# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| RUSSELL D. STAGEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:24-cv-00505-JAR |
| | ) |
| PHH MORTGAGE CORPORATION | ) |
| d/b/a PHH MORTGAGE SERVICES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion to dismiss filed by Defendant PHH Mortgage Corporation (PHH) in this case involving mortgage loan servicing regulations. Plaintiff Russell Stageman asserts three counts against PHH for violations of the Real Estate Settlement Procedure Act (RESPA), 12 U.S.C. §2605 et seq., and one count in violation of the Truth in Lending Act (TILA),15 U.S.C. § 1639g.  PHH argues that Counts I-III, which invoke administrative regulations, are not cognizable following the U.S. Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).[1]  For the reasons set forth below, the motion will be denied.

## BACKGROUND

The facts set forth in Stageman's complaint are as follows.  In April 2005 Stageman took out two mortgages on his principal residence in Eureka, Missouri.  PHH is a mortgage servicer as defined by RESPA and Regulation X (12 C.F.R. § 1024.1 et seq.) and services the loans on Stageman's home. In 2020, fearing a decrease in his income due to the COVID-19 pandemic,

---

[1]     PHH advises the Court that it no longer seeks dismissal of Count IV invoking the Truth in Lending Act. (Doc. 32 at 7 n.7).

Stageman accepted an offer from PHH for mortgage assistance in the form of a forbearance. PHH offered him a trial payment plan on his first mortgage but later refused to accept payments, stating that the offer was no longer available. Stageman also claims that PHH falsely represented that his second mortgage was in forbearance when it was not. PHH eventually approved a loan modification on the second mortgage but continued to demand payments and other charges on the first one.

In January 2022, Stageman retained counsel and began to request information related to his loans and PHH's servicing of them. Between February and April 2022, Stageman sent a total of 12 formal Requests for Information seeking basic information about his loans, such as an itemized payoff statement, names and addresses of the current owner/assignee and master/current servicer(s), transaction history, and escrow analysis. Each time, PHH refused to comply, claiming that Stageman's signature did not match the one on file, even after Stagemen sent notarized requests.  In June 2022, Stagemen sent PHH two formal Notices of Error citing PHH's failure to provide the requested information. PHH continued to ignore Stageman's requests.

Stageman filed the instant complaint in April 2024. Counts I-III invoke RESPA § 2605(k) and three related regulations promulgated by the Consumer Financial Protection Bureau (CFPB). In Count I, Stageman asserts that PHH violated 12 C.F.R. § 1024.36 by failing to comply with his written Requests for Information. In Count II, he pleads that PHH violated 12 C.F.R. § 1024.35 by failing to rectify the Notices of Error. In Count III, Stageman claims that PHH violated 12 C.F.R. § 1024.41(e) by failing to allow him a reasonable period of time to fulfill any remaining requirements of his trial payment plan, which would have permitted him to qualify for and receive the loss mitigation option that PHH allegedly offered him. In Count IV, Stageman asserts that PHH violated 12 C.F.R. § 1026.36(c)(3) and 12 U.S.C. § 1639g by failing to provide

him with an accurate payoff balance within a reasonable time. Stageman seeks statutory and actual damages and attorney fees.

PHH now moves to dismiss Counts I-III for failure to state a claim, asserting that *Loper Bright* precludes Stageman's claims because they depend on regulatory interpretation rather than statutory authority. (Doc. 24 at 5).

## APPLICABLE LAW

### 12(b)(6) Standards

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint must be dismissed for failure to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings must include sufficient factual information to provide notice of the grounds on which the claims rest and must "raise a right to relief above the speculative level." *Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2).

### RESPA Statutory Framework

Counts I-III of Stageman's complaint invoke the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605. Congress expressed its legislative intent for RESPA as follows:

(a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and

are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country. […]

(b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result--

    (1) in more effective advance disclosure to home buyers and sellers of settlement costs;

    (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

    (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and

    (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(a)–(b).

As relevant to Stageman's claims, RESPA provides:

**(e) Duty of loan servicer to respond to borrower inquiries**

**(1) Notice of receipt of inquiry**

**(A) In general**

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

  \* \* \*

**(2) Action with respect to inquiry**

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

\* \* \*

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

**(k) Servicer prohibitions**

**(1) In general**

A servicer of a federally related mortgage **shall not**--

\* \* \*

(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or

(E) **fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter**.

12 U.S.C. § 2605 (e) and (k) (emphasis added).

RESPA expressly creates liability to individual borrowers for failures to comply with any provision: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each failure" in the amount of actual damages to the borrower and any additional damages as the court may allow, up to $2,000.  12 U.S.C. § 2605(f).

Congress gave the Consumer Financial Protection Bureau (CFPB) authority "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617(a). Further insight into Congress's intent for the CFPB is found in the Dodd-Frank Act, expressing a purpose to ensure "all consumers have access to markets for consumer financial products and services"[2] and that such markets are "fair, transparent, and competitive." 12 U.S.C. § 1511. The CFPB is authorized to exercise its authority under federal consumer financial law to

---

[2]    The statutory definition of "consumer financial products and services" encompasses the extending of "credit and servicing loans," applicable to mortgage servicers. 12 U.S.C. § 5481 (15)(A)(i).

5

ensure that consumers are provided with timely information and protected from unfair, deceptive, or abusive practices. *Id*. The Director of the CFPB "may prescribe rules and issue orders and guidance, as may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws." 12 U.S.C. § 5512.

### Related Regulations

Pursuant to the foregoing statutory authority, the CFPB created several regulations that Stageman alleges PHH violated, specifically 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41(e). As relevant to Count I, § 1024.36 states in part:

> A servicer shall comply with the requirements of this section for any written request[s] for information from a borrower that includes the name of the borrower, information that enables the servicers to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan.

12 C.F.R. § 1024.36(a). The servicer must respond to an information request by "either . . . providing the borrower with the requested information and contact information . . . or . . . [c]onducting a reasonable search for the requested information and providing the borrower with a written notification" of their attempted search for the information. 12 C.F.R. § 1024.36(d)(1). For requests of information beyond basic facts like the identity of the assignee of a mortgage, a servicer must comply within 30 business days (excluding holidays and weekends). § 1024.36(d)(2)(i)(B).

As relevant to Count II, § 1024.35 requires that servicers investigate and respond to notices of error in certain ways. That regulation states in part:

> [A] servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

6

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i). For all types of errors, the servicer must respond at most "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error." § 1024.35(e)(3)(i)(C).

As relevant to Count III, § 1024.41 provides loss mitigation procedures to avoid foreclosure. It states in relevant part:

[I[f a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower. […]

* * *

A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.

12 C.F.R. § 1024.41(e)(1) and (2)(ii). A borrower is entitled to "enforce the provisions of this section pursuant to section 6(f) of RESPA" (referring to 12 U.S.C. §2605(f) creating a private right of action for damages), but nothing in the regulation imposes a duty on a servicer to provide a specific loss mitigation option.  12 C.F.R. § 1024.41(a).

### *Loper Bright*

For 40 years, the *Chevron* doctrine instructed federal courts to defer to an agency's reasonable interpretation of its governing statutes.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  In 2024, the Supreme Court overturned *Chevron* in *Loper*

*Bright*, holding that the Administrative Procedure Act (APA) prescribes no deferential standard for agency actions or interpretations and courts must exercise their own independent judgment in each case.  603 U.S. at 412.

*Loper Bright* did not affect an agency's ability to exercise rulemaking authority clearly conferred by statute. Legislative delegation of authority within reasonable bounds is permitted and is sometimes the best reading of statutory language. *Loper Bright*, 603 U.S. at 395. The Supreme Court recognized that a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 394. Congress has often enacted statutes that "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Id.* at 394-95.  "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress." *Id.* at 395. "The Court fulfills that role by recognizing constitutional delegations" and "ensuring [that] the agency has engaged in reasoned decision-making" within the boundaries of constitutionally permissible delegation. *Id.*

## DISCUSSION

Relying on *Loper* Bright, PHH contends that Counts I-III fail to state a claim because agency regulations cannot give rise to a cause of action. Although PHH is correct that a regulation cannot create a right that Congress has not, *Alexander v. Sandoval*, 532 U.S. 275, 291, (2001), that general principle does not prescribe dismissal here because Stageman's claims are firmly rooted in the statute.  With respect to Counts I and II, RESPA itself imposes a loan servicer's duty to respond to borrower inquiries (§ 2605(e) and (k)) and explicitly creates a private right of action for violations (§ 2605(f)).  The regulations Stageman invokes in Counts I

and II (§ 1024.36 and § 1024.35, respectively) plainly track the information-sharing requirements of the statute.

While the loss mitigation regulation invoked in Count III (§ 1024.41) does not find such closely parallel language in RESPA, courts have readily acknowledged a cognizable action without the need for *Chevron* interpretation. "RESPA prohibits a mortgage servicer from moving for a foreclosure judgment or from conducting a foreclosure sale until after a borrower's loss-mitigation process has been completed." *Cilien v. U.S. Bank Nat'l Ass'n*, 687 F. App'x 789, 791 (11th Cir. 2017). "RESPA's plain language confers a cause of action on borrowers to protect against RESPA loss mitigation violations." *McHugh v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS, Inc. Asset-Backed Certificates, Series 2007-8*, No. CV 21-2174 (JRT/JFD), 2022 WL 4226208, at *3 (D. Minn. Sept. 13, 2022). *See also Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1009 (11th Cir. 2016) (finding § 1024.41 unambiguous as to the deadlines for loss mitigation applications); *Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1372 (11th Cir. 2019) (finding provisions of § 1024.41 unambiguous); *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 424 (6th Cir. 2022) (recognizing a cause of action in § 1024.41); *Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (same); *Muathe v. Wells Fargo Bank, NA*, 807 F. App'x 855, 859 (10th Cir. 2020) (same); *Todaro v. Ditech Fin. LLC*, No. 4:18-CV-00261-BCW, 2018 WL 11510960, at *2 (W.D. Mo. Oct. 26, 2018) (same); *Young v. Select Portfolio Servicing, Inc.*, No. 20-11236, 2021 WL 5968662, at *2 (5th Cir. Dec. 15, 2021); (same); and *Vance v. Wells Fargo Bank, N.A.*, 291 F. Supp. 3d 769, 773 (W.D. Va. 2018) (same).

As the foregoing cases recognize, RESPA authorizes the CFPB to "fill up the details"[3] by adopting measures to advance its intended statutory purpose to protect consumers from abusive practices (§ 1511) such as avoidable loan foreclosure (§ 2605(k)(1)(C) and (E)). Language in a regulation may invoke a private right of action that Congress created through statute. *Alexander*, 532 U.S. at 291. Section 1024.41(a) does precisely that.

## CONCLUSION

*Loper Bright* does not nullify existing regulations based in clear statutory authority creating a private cause of action. The regulations giving rise to Stageman's Counts I-III find clear statutory authority in RESPA. "If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Union Pac. R.R. v. Surface Transp. Board*, 113 F.4th 823, 833 (8th Cir. 2024).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **DENIED**. (Doc. 23).

**IT IS FURTHER ORDERED** that Defendant shall file an answer to the complaint within **fourteen (14) days** of this Order.

Dated this 12th day of February, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

---

[3]    *Loper Bright*, 603 U.S. at 395.